UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  05-21010-CIV-MARTINEZ-BANDSTRA**

BOX OFFICE ENTERTAINMENT, LLC,

      Plaintiff,

vs.

BRIAN D. GORDON, CPA, P.A. and BRIAN
D. GORDON, CPA,

      Defendants.

_____/

## <u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss the Amended Complaint **(D.E. No. 25)**.  The Court has carefully considered the motion, Plaintiff's Response Memorandum in Opposition (D.E. No. 29), Defendant's Reply Memorandum (D.E. No. 34), Plaintiff's Amended Complaint and attached exhibits (D.E. No. 20), and it is otherwise duly advised.  This Court also held a hearing on the instant motion on July 12, 2006.

Plaintiff Box Video Entertainment, LLC ("Plaintiff" or "Box Video") is a DVD rental company that has filed a three-count Amended Complaint against Defendants Brian D. Gordon, C.P.A,  and Brian D. Gordon, C.P.A., P.A. (collectively "Defendants"), an individual accountant and his professional association, related to a financial statement that was prepared by the Defendants.  More specifically, Plaintiff alleges that Defendants prepared an "Independent Auditor's Report" that was subsequently used by American Entertainment Distributors ("AED"), a company that is not a party to this litigation, as part of a financial statement that Plaintiff relied on to its detriment when it ordered machines from AED that were never delivered.  *See generally*

(Amended Complaint, hereinafter "Am. Compl.," D.E. No. 20 at ¶¶ 20-25).  Plaintiff's Amended

Complaint alleges three counts as to both Defendants: 1) negligence (Count I); 2) negligent

misrepresentation (Count II); and 3) fraudulent misrepresentation (Count III).  After careful

consideration of the record in this case, this Court finds that the Amended Complaint should be

dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## I. Background

This Court first provides a basic factual background of this case.   Additional factual

allegations are discussed, *infra*, in the context of each of the alleged counts.  Neither party

disputes that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  This case is

related to a civil enforcement actions brought by the Federal Trade Commission and one criminal

case brought by the United States involving AED.[1]  As Plaintiff acknowledges in its Amended

Complaint, AED is currently in receivership and the company is "alleged to have engaged in

massive fraud" in connection with the sale of business opportunities relating to robotic video and

DVD vending machines.  (Am. Compl. at ¶ 13).  Plaintiff and AED entered into a purchase order,

which is attached as Exhibit A to the Complaint, for the sale of ten robotic DVD vending units for

$375,000. *Id*. at ¶ 16.  Plaintiff alleges that although it paid the $375,000, AED never delivered

nine of the ten units to Plaintiff.  *Id*. at ¶ 17.

Plaintiff's Amended Complaint explains that Plaintiff requested information from AED

before executing the purchase order.  *Id*. at ¶ 18.  In response, AED sent Plaintiff a package of

documents, which is attached to the Amended Complaint as Composite Exhibit B, that included a

---

[1]  *See generally Federal Trade Commission v. American Entertainment Distributors, Inc.*, Case No. 04-22431-CIV-MARTINEZ; and *United States v. Russell G. MacArthur, Jr. et al.*, Case No. 05-60203-CR-MARTINEZ.

financial statement and attachments for AED dated March 31, 2004 ("Financial Statement"). *Id.* at ¶ 19. The Financial Statement contains an "Independent Auditor's Report," which was signed by Defendants, that states that Defendants had audited the balance sheet of AED in accordance with generally accepted auditing standards. *Id.* ¶ 20. That report further states that "these standards required that I plan and perform the audit to obtain reasonable assurance about whether the statements are free of material misstatement . . ." and that, in the opinion of Gordon C.P.A., "the financial statements referred to above presents [sic] fairly, in all material respects, the financial position, results of operations, and cash flows [of AED] as of March 31, 2004 and in conformity with generally accepted accounting principles." *Id.* at ¶ 20 (quoting Exh. B, D.E. No. 20 at 39). Plaintiff's Amended Complaint emphasizes that the balance sheet of AED dated March 31, 2004, which is attached to the Independent Auditor's Report, shows assets of $775,503.00, including $440,975.00 in inventory, total assets of $1,461,860.00, and total liabilities of only $26,557.00. *Id.* at ¶ 21. Furthermore, Plaintiff emphasizes that sales for the three-month period that ended March 31, 2004 were listed as $7,597,248.00 with a net income for that same period of $418,915. *Id.*

Plaintiff alleges that in reliance on these financial statements, Box Video, through its manager, "believed it was safe to sign the purchase order, to purchase the robotic DVD distributing machines from AED and to pay to AED the sum of $375,000 prior to receipt of that merchandise." *Id.* at ¶ 22.

## II.  Standard of Analysis[2]

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the

---

[2]  The standard of analysis under Federal Rule of Civil Procedure 9(b) is discussed in part III(B) of this Order, *infra*.

allegations of the complaint as true. *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999).  Moreover, the complaint must be viewed in the light most favorable to the plaintiff. *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.,* 795 F.2d 948, 953 (11th Cir. 1986).  To warrant a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Ala.,* 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

Nonetheless, to survive a motion to dismiss, a plaintiff must do more than merely label his or her claims. *Blumel v. Mylander,* 919 F. Supp. 423, 425 (M.D. Fla. 1996).  Thus, dismissal of a complaint or a portion thereof is appropriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall County Bd. of Educ.*, 992 F.2d 1171, 1174 (11th Cir. 1993).  In deciding a motion to dismiss, a court may only examine the "four corners" of the complaint and any matters incorporated therein, and not matters outside the complaint, without converting the motion to dismiss into a motion for summary judgment. *See Crowell v. Morgan Stanley Dean Witter Servs., Co., Inc.*, 87 F. Supp. 2d 1287, 1290 (S.D. Fla. 2000).

### III. Discussion

**A.     Plaintiff's Negligence Claim and Negligent Misrepresentation Claim are Precluded by Established Principles of Florida Law Regarding Accountant Negligence Liability to Third Parties**

An established body of Florida case law has addressed the negligence liability of accountants to third parties.  In *First Florida Bank, N.A. v. Max Mitchell & Company*, 588 So. 2d 9 (Fla. 1990) ("*Max Mitchell*"), the Florida Supreme Court surveyed the various lines of legal

authority related to accountant negligence liability where no privity exists between the accountant

and the plaintiff.  The Florida Supreme Court, after carefully considering the policy implications

reflected in the various doctrinal approaches, decided to adopt the approach embodied in section

552 of the Restatement (Second) of Torts.  *Id*. at 14-15.  The Florida Supreme Court, after

quoting at length from the Restatement (Second), concluded:

> Because of the heavy reliance upon audited financial statements in the contemporary financial world, we believe permitting recovery only from those in privity or near privity is unduly restrictive. On the other hand, we are persuaded by the wisdom of the rule which limits liability to those persons or classes of persons whom an accountant "knows" will rely on his opinion rather than those he "should have known" would do so because it takes into account the fact that an accountant controls neither his client's accounting records nor the distribution of his reports.

*Id*. at 15.  The Florida Supreme Court indirectly noted, by quoting the North Carolina Supreme

Court, that this standard "represents the soundest approach to accountant's liability for negligent

misrepresentation" and that it "constitutes a middle ground."  *Id*. (quoting *Raritan River Steel Co.*

*v. Cherry, Bekaert & Holland*, 367 S.E. 2d 609, 617 (1988)).  Thus, the Florida Supreme Court's

adoption of the Restatement (Second)'s approach applies to both the general negligence cause of

action and the negligent misrepresentation causes of action in the instant case.  *See id*.

     As noted by the Florida Supreme Court, Section 552 of the Restatment (Second) of Torts

states in relevant part:

> § 552. Information Negligently Supplied for the Guidance of Others
>
> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Max Mitchell*, 358 So. 2d at 12 (quoting Restatement (Second) of Torts, § 552 (1976))

The Florida Supreme Court's further discussion of the Restatement (Second) helps define the

parameters of the liability of accountants to third parties under Florida law:

> Under this Section, as in the case of the fraudulent misrepresentation (see § 531), it is not necessary that the maker should have any particular person in mind as the intended, or even the probable, recipient of the information. In other words, it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given. *It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated.*

*Max Mitchell*, 358 So. 2d at 15 (quoting Restatement (Second) of Torts, § 552 (1976)) (emphasis

added).  Furthermore, the Florida Supreme Court discussed illustration 10 under section 552 of

the Restatement (Second) of Torts, which contains facts very similar to those in the instant case:

> 10. A, an independent public accountant, is retained by B Company to conduct an annual audit of the customary scope for the corporation and to furnish his opinion on the corporation's financial statements. A is not informed of any intended use of the financial statements; but A knows that the financial statements, accompanied by an auditor's opinion, are customarily used in a wide variety of financial transactions by the corporation and that they may be relied upon by lenders, investors, shareholders, creditors, purchasers and the like, in numerous possible kinds of transactions. In fact

-6-

> B Company uses the financial statements and accompanying auditor's opinion to obtain a loan from X Bank. Because of A's negligence, he issues an unqualifiedly favorable opinion upon a balance sheet that materially misstates the financial position of B Company, and through reliance upon it X Bank suffers pecuniary loss. A is not liable to X Bank.

*Id*.

In *Max Mitchell*, a bank sued an accountant who had provided financial statements about his client, which the bank relied upon in approving a loan to that client. *Id*. at 10. Notably, the accountant had numerous discussions regarding his client over the course of several weeks, and, among other things, the accountant assured the bank that he was not aware of any material changes in the client's financial status. *Id*. As a result, the bank issued a line of credit to that client. *Id*. However, the bank later discovered that the financial statements had substantially overstated the assets, understated the liabilities, overstated net income, and that the statements had failed to reflect $750,000 in debts to several banks. *Id*. at 10-11.

In applying the relevant legal standard to the facts of *Max Mitchell*, the Florida Supreme Court explained that the accountant would not be held liable if it were not for the unusual fact that the accountant had actively negotiated on behalf of his client and made additional direct representations regarding the financial status of that client:

> At the time Mitchell prepared the audits for C.M. Systems, it was unknown that they would be used to induce the reliance of First Florida Bank to approve a line of credit for C.M. Systems. Therefore, *except for the unusual facts of this case, Mitchell could not be held liable to the bank for any negligence in preparing the audit*. However, Mitchell *actually negotiated the loan on behalf of his client*. He *personally delivered* the financial statements to the bank *with the knowledge that it would rely upon them in considering whether or not to make the loan*. Under this unique set of facts, we believe that Mitchell vouched for the integrity of the audits and that his conduct in dealing with the bank sufficed to meet the requirements of the rule which we have adopted in this opinion.

*Id*. at 16 (emphasis added). Furthermore, in applying the Florida Supreme Court's legal standard

established in *Max Mitchell*, the Florida Fourth District Court of Appeal found that the shareholders of a corporation were not a sufficiently "limited group of persons" within the meaning of the Florida Supreme Court's holding in *Max Mitchell* and Section 552 of the Restatement (Second). *Machata v. Seidman & Seidman*, 644 So. 2d 114, 116 (Fla. 4th DCA 1994).

In the instant case, Plaintiff alleges that because Defendants had served as AED's accountants for an unspecified "extended period of time, [D]efendants "must have been aware of the details of AED's business, including the fact that AED sold these machines and business opportunities to purchasers," and that "AED's representatives as a practice disseminated AED's Financial Statement as generated by defendants to those potential purchasers of AED's machines and business opportunities as part of the company's information package, and defendants must have been aware of such practice." (Am. Compl. at ¶ 29). Similarly, Plaintiff also alleges that "Defendants must have known that AED would give the Financial Statement and its addenda to purchasers of AED's machines and business opportunities who would rely on them in making decisions to do business with AED, and defendants must have intended that the purchasers of AED's machines and business opportunities would rely on the Financial Statement." *Id*. at ¶ 40.

This Court finds that Plaintiff's allegations that Defendants "must have known" is equivalent to the "should have known" reasonably foreseeable standard that the Florida Supreme Court declined to adopt. *See Max Mitchell*, 558 So. 2d at 15. Unlike the facts alleged in the *Max Mitchell* case, there are no allegations that Defendants actually *knew* that AED would use the financial reports to induce Box Video to purchase the machines. Furthermore, there are no allegations in the instant Amended Complaint that Defendants actively negotiated on behalf of

AED, that Defendants made any representations to Box Video, or that Defendants directly delivered the financial statements to Box Video.  Rather, the allegations in the Amended Complaint are almost identical to those in illustration ten of the Restatement (Second).  Plaintiff essentially alleges that because of Defendants negligence, Defendants issued an unqualifiedly favorable opinion upon a balance sheet that materially misstated the financial position of AED, and that through reliance upon that opinion, Box Video suffered pecuniary loss.  As stated in illustration ten, and as adopted by the Florida Supreme Court, Defendants are not liable to Plaintiff in this case.

Furthermore, as was further explored at oral argument, Plaintiff advances the legal position that Box Video was within a sufficiently limited class of persons that Defendants "must have known" would rely on its financial opinion.  This Court agrees with Defendant's point at oral argument that, taken to its logical extreme, the class of potential plaintiffs under Plaintiff's proposed legal standard would "have to include any *potential* purchaser anywhere in the world." In *Machata*, the court found that a more narrow, discrete, and ascertainable class of *existing* shareholders were not a "limited group of persons" within the meaning of the Florida Supreme Court's holding in *Max Mitchell* or Section 552 of the Restatement.  *See Machata*, 644 So. 2d at 116.  This Court finds that, in the absence of any allegations of direct contact between Defendants and Box Video, and taking the facts as alleged in the Amended Complaint to be true, Plaintiff is not within a "limited group of persons" for which Defendant can be liable.  Thus, this Court finds that under established principles of Florida law regarding accountant liability to third parties, dismissal of Counts I and II of the Amended Complaint is appropriate because on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall County Bd. of Educ.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

This Court further finds that it is appropriate to dismiss Counts I and II with prejudice at this juncture.  This Court emphasizes that the operative complaint in this case is the Amended Complaint, and that Defendants filed a Motion to Dismiss the original Complaint which essentially raised the same arguments that are contained in the instant Motion to Dismiss the Amended Complaint.  Plaintiff invokes the mantra that more discovery is necessary to determine if there is any information in existence to support Plaintiff's claims.  However, this Court agrees with the Defendants' point that information regarding direct contact between Box Video and Defendants would be within the knowledge of the Plaintiff.  Plaintiff concedes in its Response Memorandum that within the parameters of Federal Rule of Civil Procedure it cannot allege with certainty that Defendants knew that their financial reports were being disseminated to Box Video.  *See* (D.E. No. 29 at 8).  Plaintiff essentially conceded at oral argument that in order for Plaintiff to survive the instant motion, it is necessary for the Court to make a logical inference that because Defendants had served as AED's accountant for an unspecified period of time, they "must have known."  This Court finds that under well established principles of Florida law, this Court is not permitted to make that inference in light of the procedural posture of this case and the factual allegations in the Amended Complaint.   Accordingly, Counts I and II are dismissed with prejudice.

**B.      Plaintiff's Fraudulent Misrepresentation Claim should Be Dismissed for Failure to Plead with Sufficient Particularity Pursuant to Federal Rule of Civil Procedure 9(b).**

Federal Rule of Civil Procedure 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id*.  The Eleventh Circuit has observed that Rule 9(b) prevents "[s]peculative suits against innocent actors for

-10-

fraud," and explained that under Rule 9(b) allegations of fraud "must include facts as to time, place, and substance of the defendant's alleged fraud." *United States ex rel. Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 568-69 (11th Cir. 1994). The Eleventh Circuit has also explained:

> The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. The application of Rule 9(b), however, must not abrogate the concept of notice pleading. Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotations and citations omitted) (holding that despite the existence of "red flags," the "series of inferences is too tenuous" to believe that auditors knew of or were reckless in disregarding fraud when no tips, letters or conversations supporting such knowledge were identified in the complaint). The Eleventh Circuit has further noted: "When Rule 9(b) applies to a complaint, a plaintiff is not expected to actually prove his allegations, and we defer to the properly pleaded allegations of the complaint. But we cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit." *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002).[3]

---

[3]  In that case, the Eleventh Circuit further explained that an important purpose of Rule 9(b) is to protect defendants from frivolous suits, or "spurious charges of immoral and fraudulent behavior." *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). The Eleventh Circuit panel in that case noted: "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst,

-11-

Under Florida law, the elements of a claim for fraudulent misrepresentation are: 1) a false statement concerning a material fact; 2) the representor's knowledge that the representation is false; 3) an intention that the representation induce another to act on it; and, 4) consequent injury by the party acting in reliance on the representation. *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985) (citing *Huffstetler v. Our Home Life Ins. Co.*, 65 So. 1 (Fla. 1914)).  The Eleventh Circuit has also held that in order to satisfy the requirements of Rule 9(b) in the context of fraud a plaintiff must allege: 1) precisely what statements were made in what documents or oral representations or what omissions were made, and 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and 3) the content of such statements and the manner in which they misled the plaintiff, and 4) what the defendants "obtained as a consequence of the fraud.  *Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997).

In a case applying rule 9(b) in the context of the allegations of fraud against financial auditors, the Eleventh Circuit held that "in order to plead fraud with sufficient particularity to satisfy Rule 9(b), plaintiffs must therefore allege more than mere violations of auditing standards." *Ziemba v. Cascade Intl., Inc.*, 265 F.3d 1194, 1209 (11th Cir. 2001); *see also In re Software Toolworks Inc.*, 50 F.3d 615, 627 (9th Cir. 1994) ( "[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.").  In *Ziemba*, investors brought suit against accountants as alleged participants in securities fraud.  *See generally Ziemba v. Cascade Intl., Inc.*, 265 F.3d 1194.  The Eleventh Circuit panel noted that in certain circumstances, courts have held that "allegations of violations of GAAP or GAAS,

---

are baseless allegations used to extract settlements." *Id.* (citing *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1053 (S.D. Ga.1990)).

coupled with allegations of ignoring 'red flags,' can be sufficient to state a claim of securities fraud." *Id*. at 1209-10 (citing *In re Sunbeam Sec. Litig.*, 89 F. Supp.2d 1326, 1344-47 (S.D. Fla. 1999) (holding that plaintiffs pleaded fraud with sufficient particularity when they alleged that the accounting firm had been "tipped off" that Sunbeam had overstated its restructuring reserves and accounting firm ignored the information and issued its unqualified audit opinion); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 66 F. Supp. 2d 622, 629-30 (E.D. Pa.1999) (concluding that allegations that accounting firm was informed at an Auditing Committee Meeting that Ikon's CFO was "cooking the books" and accounting firm's failure to investigate this and other information about accounting problems supported a claim of reckless behavior by accounting firm); *In re Health Management, Inc. Sec. Litig.*, 970 F. Supp. 192, 203 (E.D. N.Y. 1997) (holding that violations of auditing principles accompanied by ignorance of "red flags," including an analyst's letter warning the accounting firm of artificially inflated accounts receivable, was sufficient to create a strong inference of recklessness)).

    In the instant case, Plaintiff alleges that: "[D]efendants intentionally made false statements of material facts to the plaintiffs [sic] by intentionally creating the Financial Statement and other information referred to herein that were materially false and incorrect and at odds with the true financial picture of AED." Am. Compl. at ¶ 44.  Similarly, Plaintiff also alleges that "[D]efendants knew or should have known these statements to be incorrect, since defendants prepared the financial statements and other information. Defendants knew that the income, inventory, sales and profit levels in AED's Financial Statement were materially overstated." *Id*. at ¶ 45.

    First, this Court finds that these allegations are impermissibly vague and conclusory. Notably, as is correctly indicated by Defendants, the allegation that Defendants created the

financial statements is contradicted by the exhibits to the Amended Complaint. The auditor's report specifically states that the financial statements on the balance sheets "are the responsibility of the Company's management." (D.E. No. 20 at 39). This Court also agrees that Plaintiff's allusion in paragraph 44 of the Amended Complaint to "other information" is impermissibly vague.

Second, as also correctly noted by Defendants, Plaintiff fails to allege any facts that indicate that Defendants were aware of any fraud or misstatements on the part of AED. As in the *Ziemba* case, the Plaintiff in the instant case has failed to allege the existence of specific "red flags," such as tips, letters, or conversations, that should have alerted Defendants to any alleged inaccuracies in the financial statements. *Ziemba*, 256 F.3d at 1210. As Defendants correctly note, Plaintiff fails to allege what was false about the Defendants' statements. Although Plaintiff's Amended Complaint reiterates the financial figures contained in the balance sheet attached to Defendants' report, it does not describe which numbers were inaccurate and how this inaccuracy was material. This Court agrees that in the absence of allegations of what the actual numbers were at the time the audit was prepared, and the failure to allege "red flags" that should have apprised the Defendants of the inaccuracy of the balance sheets, Plaintiff has failed to satisfy the pleading requirements of Rule 9(b). Furthermore, pursuant to the last element of the Eleventh Circuit's *Brooks v. Blue Cross Blue Shield of Fla., Inc.*, Plaintiff has failed to allege what the Defendants in this case obtained as a consequence of the fraud. *See Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997).

As was indicated at oral argument, and as is revealed in Defendant's Response in Opposition and the Amended Complaint, it appears that the essence of Plaintiff's fraud claim, much as in its negligence and negligent misrepresentation claims, is the argument that because

Defendants were AED's accountants for some (unspecified) period of time, they must have known that their client was engaging in fraud and must have been a part of the fraud. As the Eleventh Circuit held in affirming dismissal of the plaintiffs' claims in *Ziemba*, this Court finds that this inference "is too tenuous." *See Ziemba*, 256 F.3d at 1210.

This Court emphasizes that Plaintiff has already amended its complaint once, after Defendants raised arguments that are essentially identical to those in the instant motion. This Court finds that Plaintiff should not be given leave to conduct discovery. This Court is cognizant of the fact that the Eleventh Circuit has emphasized that "a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir 1985) (citing *Zuckerman v. Franz*, 573 F. Supp. 351, 356 (S.D. Fla.1983)). However, in the context of the instant case, this Court emphasizes that one of the purposes of the particularity requirements of Rule 9(b) is to "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." *See id*. This Court finds that in light of the existing record, allowing further discovery relating to fraud would amount to giving Plaintiff free licence to engage in a fishing expedition and would undermine a critical function of Rule 9(b).

After careful review of the entire record in this case, and the arguments of the parties during oral argument, this Court finds that Plaintiff has failed to satisfy the heightened pleading requirements of Rule 9(b) and that Count III should be dismissed with prejudice.

### C.   In the alternative, this Court finds that Plaintiff's Amended Complaint Should be Dismissed in its Entirety Because Plaintiff has failed to Adequately Allege that Defendant Proximately Caused Plaintiff's Injury

This Court notes that the alleged facts of this case are rather unusual in that the gravamen of Plaintiff's Amended Complaint is that Plaintiff was injured because it relied on Defendants'

financial opinion and ordered machines that were never delivered because of an injunction against AED obtained by the Federal Trade Commission.  Under Florida law, "liability for negligence must be predicated on a causal connection between the alleged negligence and the injury of which complaint is made."  *Pope v. Pinkerton-Hays Lumber Co., Inc.*, 120 So. 2d 277, 230 (Fla. 1st DCA 1960).  Furthermore, there must be such a natural, direct, and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act the injury would not have occurred.  *Id.*  The Florida Supreme Court has applied the foreseeability test to independent intervening causes and has concluded that the intervention of independent intervening causes does not break the causal connection if the intervention of such forces was itself probable or foreseeable.  *Id.* at 230.  Similarly, proximate cause is also an essential component for a fraud claim under Florida law.  *See Sherban v. Richardson*, 445 So. 2d 1147, 1148 (Fla. 4th DCA 1984).

This Court agrees with Defendants' argument that Plaintiff failed to sufficiently plead proximate cause.  Accepting as true Plaintiff's allegations that Defendant's financial opinions were inaccurate, this Court questions the natural relationship to the harm suffered by Plaintiff.  Plaintiff's purchase order, attached to the Amended Complaint as Exhibit A, is dated July 22, 2004.[4]  According to the terms of Plaintiff's purchase order, as well as the allegations in paragraph

---

[4]  The Eleventh Circuit has held that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

23 of the Amended Complaint, AED was required "to ship the machines to Plaintiff Box Video within 60 business days from the receipt of the signed Purchase Order and full payment." Am. Compl. at ¶ 23.   However, as Plaintiff alleges: "On September 29, 2004, this Court issued a temporary restraining order with an asset freeze and appointed a receiver for AED and other related companies. *Id*. at ¶ 25.  Furthermore, Plaintiff alleges that the basis of this freeze was that "AED and its principals were alleged to have engaged in massive fraud in connection with the sale by AED, its affiliated companies and principals of business opportunities and various video and DVD machines." *Id*. at ¶ 13.

Thus, unlike *Max Mitchell*, where the plaintiff bank relied on representations about the solvency of the client of the accountant defendants, and the client later proved to be insolvent, it was the advertising and sales practices of AED, rather than its financial condition, that resulted in the issuance of an injunction.   In light of the fact that an injunction was issued against AED before the time to deliver had passed, this Court agrees that, as a matter of law, Defendants' audit of AED, regardless of its accuracy, cannot be the proximate cause of Plaintiff's alleged damages because the injunction obtained by the Federal Trade Commission was an unforeseeable intervening cause. *See Pope*, 120 So. 2d at 232-33; *Sherban*, 445 So.2d 1149.  Thus, because no construction of the factual allegations will support the cause of action on the basis of a dispositive issue of law, dismissal of the Amended Complaint is appropriate. *See Marshall County Bd. of Educ.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

For these reasons, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendant's Motion to Dismiss the Amended Complaint **(D.E. No. 25)** is **GRANTED**.

2.  The Amended Complaint is **DISMISSED with prejudice**.  This Order is a final

appealable order.

DONE AND ORDERED in Chambers at Miami, Florida, this 9th day of May, 2007.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Bandstra
All Counsel of Record